# In re Opening of Park Avenue.
## Huidekoper's Appeal.

1. In opening Park avenue in the city of Meadville in pursuance of an ordinance of the city council and the provisions of the Act of the 6th April 1870, complainants alleging that they were aggrieved by the action of the viewers and the city council in charging their land for contribution, and that the assessment was greatly in excess of the benefit which the property derived from the improvement, appealed to the Quarter Sessions; other parties along the avenue demanded issues and by the verdicts rendered in their cases the damages allowed by the viewers were enlarged to the extent of $7600. The court below without a decision upon the special questions raised by complainants' demand, calculated the amount necessary to be charged against the parties assessed for contribution in order to meet this aggregate amount due to parties entitled to damages, and this ascertained amount was divided amongst the contributing parties in proportion to the several sums which the viewers originally assessed, and a decree for the payment of these sums made accordingly.  *Held*, that this jurisdiction assumed by the court was not conferred, nor could it be implied from any of the provisions of the statute.

2. On the theory that all the damages resulting from the opening of the street must be paid by assessments for benefits upon the property along the line of said street, the court below by a mathematical apportionment assessed the increased damages among the properties benefited, *pro rata*, accordingly as they had been originally assessed by the viewers and this without an adjudication of the individual merits of the cases presented.  *Held* to be erroneous.

3. Each appeal should have been heard on its peculiar grounds, and with the adjustment of the amount found due on one hand, or chargeable on the other, the functions of the appellate tribunal would have been discharged. The city council were responsible for the improvement of the highways of the city, and the provision of the means to effect it was a duty which the law had charged to them, and which the Quarter Sessions had no authority to assume.

4. The authority to strike off an assessment on a lot, for reasons shown, was within the discretionary power of the court below, and is not reviewable here. If wrong was done the remedy must be sought there.

November 21st 1876.   Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ.   WILLIAMS and MERCUR, JJ., absent.

Certiorari to the Quarter Sessions of *Crawford county:* Of October and November Term 1876, No. 253.

On the 12th of August 1875, the council of the city of Meadville passed an ordinance for the opening of Park avenue, which ordinance was approved by the mayor, and public notice given of its passage according to law.  The city council, in pursuance of the Act of the 6th of April 1870, Pamph. L. 974 (the substance of which, so far as it relates to this case, will be found in the opinion of this court), appointed five freeholders to view and assess the damages and benefits to property owners along said avenue, who in due time made their report to the city council.  The latter appointed a time and gave notice for the hearing of all parties interested, and at the time appointed, after hearing all concerned,

declined to modify the report of the viewers, and confirmed the same.   A number of persons in favor of whom damages had been assessed, as well as a number upon whom contributions for benefits had been laid, dissatisfied with the report of the viewers, appealed to the Court of Quarter Sessions.

H. S. and F. W. Huidekoper, the complainants in this case, are the owners of a piece of ground fronting eighty feet on Market street, and extending east two hundred feet to Crab alley, the greater part of which alley is occupied by the proposed Park avenue.   The complainants had divided this lot into building lots for the purpose of sale—making four lots fronting on Market street of twenty feet each, and running back ninety feet; and four lots fronting on Crab alley, of the same size; the lots fronting on Market street and those fronting on Crab alley being divided by a private alley twenty feet wide.

Upon these lots, those fronting on Market street as well as those on Crab alley, the complainants were assessed by the viewers $1800, as a contribution to be paid by them for benefits accruing to them for opening Park avenue.   From this assessment the complainants appealed in due form, as prescribed by the charter of the city of Meadville.

In the cases in which appeals were taken to the Court of Quarter Sessions, and a jury trial demanded, feigned issues were directed by the court, in the Common Pleas, to try the question of damages or contributions, as the case might be.   When a jury trial was not demanded, the Court of Quarter Sessions disposed of the appeal on such proofs as were furnished.   The question in a number of the appealed cases was tried by jury.   In nearly all of the appeals from the assessment of damages, the damages were increased by the jury.   In some of the appeals, in cases where contributions were assessed, the contributions were diminished, and in some increased.

After all the appeals had been disposed of, it was found that the aggregate increase in the sums to different persons for damages, exceeded the amount assessed for contributions by between $7000 and $8000.

The court appointed a commissioner to take testimony and report the facts in cases where there were appeals from assessments, which jury trials had not been demanded.   As no land had been taken from these complainants, who were the only ones attending before the commissioner or offering any testimony, by consent, the commissioner reported only the testimony, without any finding of facts, the complainants alleging that the viewers had made a mistake in assessing all their property, including the lots fronting on Market street as well as those on Crab alley, and that the assessment was greatly in excess of the value of the property benefited.

Upon return of the testimony, the appeal of the complainants was argued, and held under advisement by the court.

After this, and before rendering a decision in this case, the Court of Quarter Sessions entered a rule requiring all persons interested to appear in court on a day fixed by the rule, and show cause why they should not be assessed *pro rata* for the payment of this excess, directing said rule to be published in the newspapers of the city, which was done.   After argument, and holding the matter for advisement, the Court of Quarter Sessions made an order allowing all the appealed cases, in which there was a jury trial, to remain as the jury had found, as to the damages and contributions; all others they assessed for contribution, *pro rata*, whether they had appealed from the report of viewers or not, to make up the excess of damages over the contributions assessed by the viewers.

On the 31st day of July 1876, the court (Lowrie, P. J., the material portion of whose opinion will be found in the opinion of this court), dismissed the appeal of complainants, and increased the assessment against them and others, increasing it in this case from $1800 to $2581, and at the same time they also set aside the report of the viewers altogether as to the lot of Mrs. McClintock, on the east side of said Park avenue and the south side of Chestnut street, which lot was assessed $1950, whereby that amount was lost to the contributing fund; and this was also added by the court to the other assessments for contribution, *pro rata*.   The action of the court increased the assessments for contributions more than forty per cent. above the amount reported by the viewers.

It is claimed by these complainants, that the viewers made a mistake in the assessment of their property by assessing the lots fronting on Market street, in connection with those fronting on Crab alley; and that the action of the court in dismissing their appeal was not a proceeding contemplated by the charter, and that action as well as the further action of the court in increasing the amount of the assessment against them, was without authority of law, and without jurisdiction in the court to make such order; and, that judgments having been entered against the city, on the verdicts increasing the damages in the appealed cases, and the increased assessments having been made for the purpose of paying their judgments, if they are compelled to pay said increased assessments, it would be a taking of private property for public use, without compensation, and without due course of law.

The errors specifically assigned were:—

That the court erred in deciding that the liability of each person to contribute, whether they appealed from the report of the viewers or not, could only be ascertained on the final hearing in court on the appeals; and in determining that the law of the case assumes that the advantages of such improvements to the other lots are at least equal to the damages.

*Pettis & Davis*, for complainants.—The court from its ruling was of the opinion that an appeal by any party, whether he had been awarded damages or assessed with a contribution for benefits, brought up the whole matter and gave the court jurisdiction over all the parties to the proceeding from its inception, whether they appealed or not. In this, it is submitted there was error. And this question is clearly settled by the very language of the act. The court seems to start with the conclusion as a legal proposition, that under the act all the damages from the opening of a street must be paid by assessments for benefits upon the property along the line of it. Clearly this is erroneous? Nor is it an answer in this case to say that we have nothing to do with results and consequences where the burden is imposed by the legislature, by way of taxation— that the power of imposing taxes by the legislature is unlimited. Be this as it may, where such burdens are imposed by the legislature, it must be done in express terms, and not by implication or construction. This act does not do so. The mode of assessing contributions is plainly given, and must be strictly pursued: Gault's Appeal, 9 Casey 100. Outside of the mode and extent of such taxation given by the statute, there is no jurisdiction or authority vested anywhere to impose and collect such contributions. This is a species of taxation and can be indulged to the extent of the actual benefits and no farther: Hammett v. Philadelphia, 15 P. F. Smith 146.

The court has no other than an appellate jurisdiction. After the action by the city council the question of benefits could not be examined by any other tribunal. It was a tax definitely fixed and ascertained: Commonwealth v. Woods, 8 Wright 117 ; Hammett v. Philadelphia, *supra*.

*Thomas Roddy, contra.*

Mr. Justice WOODWARD delivered the opinion of the court, January 2d 1877.

On the 12th of August 1874, an ordinance was passed by the council of the city of Meadville for the opening of Park avenue. Viewers were appointed soon afterwards, who reported on the 2d of December 1874, that in pursuance of the provisions of the Act of Assembly of the 6th of April 1870, they had proceeded to view the premises through which the avenue passed, having regard to the advantages and disadvantages caused to the several properties along its line, and had allowed and assessed damages, over and above advantages, in favor of a number of parties, whose names were returned in a schedule annexed, with the sum assessed and the number of the lot belonging to each. The amount thus allowed was $27,600. The viewers returned also as part of their report,

that they had assessed contributions upon the properties severally benefited by the opening of the avenue to the amount of the sums respectively specified in a list which they subjoined, over and above all disadvantages. The sum charged to H. S. and F. W. Huidekoper, the present complainants, was $1800. The report having been confirmed by the city council, these complainants, with numerous other parties, appealed to the Court of Quarter Sessions. Feigned issues were directed and tried in the cases in which they were de-. manded. Where they were not demanded, the court disposed of the appeal in each case upon the proofs furnished. In nearly all the appeals from the allowance of damages, the amounts awarded were increased by the verdicts. In the appeals from the assessments for contributions, the amounts were in some instances diminished, and in some increased. The general result of the investigation in the Quarter Sessions was to increase the damages allowed to the owners of property injured from $27,600 to $35,210. These complainants rested their claim to relief upon the ground that a portion of the property for which they were charged did not abut upon the avenue, and that the assessment was excessive. Testimony was taken on their behalf before a commissioner appointed for that purpose. Their appeal was argued, held under advisement, and finally dismissed when the general decree was made. At that time also the report of the viewers assessing a contribution of $1950 upon property of Mrs. A. E. McClintock was set aside on the ground that the property was separated from the avenue by a strip of land a few inches in breadth. To make up for this sum as well as for the increase in the sums awarded for damages the court provided a fund by swelling the assessments of the viewers for contribution.

By the final decree the amounts ascertained by verdicts in cases where feigned issues had been tried were left to stand as exhibiting the rights and obligations of the parties, as well against those charged for contributions as in favor of those for whom damages had been allowed. The exact sums awarded for damages in all other cases were allowed to all the other claimants in whose favor the viewers had reported. And the remaining owners of property found to have been benefited were subjected to a *pro rata* assessment of an amount sufficient to make the charges for contributions equal to the awards of damages for property injured. This was done irrespective of any relation which the contributing parties held to the city or to the subject-matter of the inquiry other than that of owners of benefited lots. The extent of the increase was about forty per cent. The charge against these complainants reported by the viewers was $1800, and was enlarged to $2581 in the final disposition of the case.

The grounds on which this decree was made were explained by the president judge of the Quarter Sessions to be that " it is only

in highly civilized states of society, that there are such proceedings as these for securing compensation to individual owners, as against the government, for property taken for public use;" that "in less advanced societies the government usually takes what it wants, with or without compensation;" that "in all states of society it is inevitable that there must be public exactions in the form of civil or military service, taxes, land and other property for public purposes, for without this there could hardly be any government, and without government there could hardly be any value for land or any other property;" that "however such exactions may be made, the proceedings by which they are carried into effect are so unlike the forms of judicial proceedings that the analogies furnished by these need great caution in their application;" and that "it was hardly accurate to argue that there was no evidence to authorize the increase in the sums charged by the viewers for contributions, for the law of the case assumes that the advantages of such improvements to the other lots are at least equal to the damages, and so in fact they are generally known to be, though they may sometimes be hardly comfortable, and the damages charged upon the other lots, being in compensation for the damage to them, are necessarily limited to that."

These proceedings were had under the 15th section of the Act of Assembly of the 6th of April 1870, authorizing the city council of Meadville, when a public highway has been laid out by them, to appoint viewers of the premises on the line of the highway, to assess the damage done to the properties injured, and to "make assessments for contributions" upon properties benefited by the improvement. The report of the viewers is made subject to approval, modification and confirmation by the council, "which confirmation," the act declares, "shall be final and conclusive on all parties." By a proviso to the act any person unwilling to receive the amount fixed for his damages, and any person unwilling to pay the amount assessed against him for contribution, may appeal to the court of Quarter Sessions of Crawford county. The court is to fix a day for hearing the appeal and to cause notice of it to be given to the mayor. The proviso proceeds in these words : " The court may hear testimony and examine witnesses concerning the amount of said damages and contributions, and may either approve the action of the city council, or diminish or increase the amount as they shall see fit ; the decree of the said court shall be final and conclusive, and the amounts so ascertained shall be paid and collected as aforesaid"— that is, in the manner prescribed in the enacting clause of the section. The statutory powers thus conferred on the Quarter Sessions are large and broad; but large and broad as they are, it is insisted by the complainants that the action taken under them has transcended all scope and purpose designed by the legislature.

Throughout the opinion of the president judge, it is apparent that the basis of the decree was the theory that "the law of the case assumes that the advantages of such improvements to the other lots are at least equal to the damages." But nothing in the Act of Assembly implies the idea of such equality, and there is no provision under which it can be worked out. It is very natural that the municipal authorities should desire the contributions charged to be equal to the damages allowed, so that the fund received would be adequate to meet the amount they would be required to pay. Municipal improvements would naturally be projected with the view of attaining substantially at least so desirable a result. But the sheer impossibility of securing even approximate equality, is illustrated by the facts developed in this record. The damages allowed by the viewers were enlarged to the extent of $7600 by the verdicts rendered in cases where issues were demanded. In such a proceeding as this, upon appeals from the confirmation of the council, damages might be found in favor of all the parties on whose rights the viewers had passed, with the exception of a single owner, who may or may not have appealed, but who, on the doctrine announced by the court below, could be made chargeable with the entire cost of the proposed improvement. It may be said of the power asserted here, as was said by SHARSWOOD, J., in Hammett v. Philadelphia, 15 P. F. Smith 146, in speaking of the authority claimed for the legislature to levy, or to permit a municipality to levy a local tax for general purposes, that "such a doctrine lands us in the absurd proposition that the whole expenses of government, general and local, may be laid upon the shoulders of one man, if one could be found able to bear such a burden." It was suggested in Gault's Appeal, 9 Casey 94, that as "states and cities cannot exist without taxation, the time, the mode and the measure of taxation are committed altogether and exclusively to the legislative discretion." This rule has been carried perhaps to the very ultimate extent that is consistent with the safety of the citizen. But it has stopped, thus far, short of the point of confiscation. There is a line at which the right of taxation, which subjects the individual to his share of the public burdens, ceases, and the right of eminent domain, which subjects him to more than his share, begins to operate. It is not requisite now to attempt to define that line, or to anticipate cases in which the question will have to be met and settled whether officers of municipal corporations, under legislative authority, may so exercise the taxing power of the Commonwealth as to work the financial ruin of the owners of lands within their boundaries. Here, however, the jurisdiction assumed by the court has not been in terms conferred, and it cannot be implied from any of the provisions the statute has made. Equality of resources and liabilities in improving the highways of the city of Meadville might promote the advantage of the municipality and the conve-

nience of its officers.  But the attainment of such advantage and
convenience is not enough to justify an encroachment on rights of
property so wide-reaching and so sweeping as that which was made
by this decree.

These complainants, alleging that they were aggrieved by the
action of the viewers and the city council, appealed to the Quarter
Sessions.  They insisted that an error had been committed in
charging their land on Market street for contribution, and that the
assessment was greatly in excess of the benefits which the property
derived from the improvement.  This issue it was the right of the
complainants to have tried.  By their appeal they had brought
themselves within the jurisdiction of the court, and were finally
subject to any decision that might be made on the merits of their
case.  The assessment charged to them could have been increased
as well as diminished, and of the increase they could not complain.
But they had the right to demand that the merits of their case
should be heard.  And it was their case which it was the duty of
the court to decide.  Instead of that, the whole question was settled
by an arithmetical calculation of the amount necessary to be charged
against the parties assessed for contributions, who had not asked
for issues, in order to meet the aggregate amount due to parties
entitled to damages.  This calculation made, the ascertained amount
was divided amongst the contributing parties in proportion to the
several sums which the viewers originally assessed.  No one of the
appeals out of which the present complaint has grown was investi-
gated on the grounds for which the action of the court was asked.
All the varying questions necessarily involved amongst parties so
numerous and in properties so diversified and valuable, were solved
on a theory of social philosophy by an arbitrary mathematical ap-
portionment.

Not only the sums found due for damages by juries in the feigned
issues, but those ascertained by the viewers and appealed from, were
left undisturbed.  Why, if equality of burdens was the object of the
Act of 1870, were not the claimants of damages subject to a *pro
rata* diminution of the amounts of their awards on the same prin-
ciple that the assessed contributors were subject to a *pro rata* en-
largement of the burdens imposed on them ?  Error was as likely
to have been committed in the one direction as in the other.  The
changes made in the amounts originally allowed, showed that the
viewers could make mistakes.  The juries in some instances in-
creased, and in some instances diminished the amounts charged for
contributions.  And it was not competent for the court to decide
that in all of these untried cases the charge had been forty per
cent. too low, and at the same time to decide that all untried claims
for damages had been accurately and justly ascertained.  But the
equality that was sought to be gained by modifying and moulding

the record of the proceeding, could in no fair and legitimate way have been secured.

Each appeal should have been heard on its peculiar grounds. With the adjustment of the amount found due on the one hand, or found chargeable on the other, the functions of the appellate tribunal would have been discharged. For eventualities the city council would have been responsible. The improvement of the highways of Meadville was in their hands, and the provision of the means to effect it was a duty which the law had charged to them, and which the Court of Quarter Sessions had no authority to assume.

The part of the decree that struck off the assessment of $1950 on lot No. 81½, belonging to Mrs. A. E. McClintock, is not reviewable here. It was within the discretionary power of the court below. If wrong was done, the remedy must be sought there.

> Decree reversed, at the cost of the appellees, and *procedendo* awarded.